UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA CRISTINA LOPEZ MANZO,  )<br>                                                               )<br>          Plaintiff,                                  )<br>                                                               )<br>     v.                                                    )<br>                                                               )<br>MICHAEL J. ASTRUE, Commissioner, Social )<br>Security Administration                      )<br>                                                               )<br>                                                               )<br>          Defendant.                             )<br>                                                               )<br>_____) | Case No.: 5:11-CV-5137-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Maria Cristina Lopez Manzo brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c) to obtain review of the Social Security Administration's final decision denying her claim for disability benefits. Ms. Lopez Manzo seeks an order reversing the final decision of the Administrative Law Judge and awarding benefits dating back to May of 2006, or in the alternative, a remand for further administrative proceedings.

Presently before the court are Plaintiff Ms. Lopez Manzo and Defendant the Commissioner of the Social Security Administration's cross-motions for summary judgment. Having considered the parties' submissions and the administrative record, the court GRANTS Defendant's Motion for Summary Judgment, and DENIES Plaintiff's Motion for Summary Judgment.

**I.      BACKGROUND**

   **a.  Ms. Lopez Manzo's Age and Educational, Vocational, and Medical History.**

Ms. Lopez Manzo is forty-eight years old and was born in Mexico. Administrative Record ("AR") at 53. After graduating from college in Mexico at nineteen, Ms. Lopez Manzo immigrated

1
Case No.: 5:11-CV-5137-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

to the United States to work as a teacher's aide. Id. at 54-55, 520. Ms. Lopez Manzo started working for the County of Santa Clara in 1994, assisting children with special needs. Id. at 86. Prior to 2006, Ms. Lopez Manzo denies any history of emotional or physical impairments. Id. at 521. She was injured on the job on May 26, 2006 when "a nine-year old student bit her right forearm, jerked her right arm, and caused her to fall onto her right knee, right elbow, and hands." Id. at 56, 74, 480.

After injuring herself, she developed chronic neck, right shoulder, right elbow, and right knee pain, according to her treating physician, Dr. Howard Siu. Id. at 479-480. Dr. Siu conducted yearly examinations of Ms. Lopez Manzo in the years following her injury. Id. at 474-507. He administered two medical examinations of Ms. Lopez Manzo in 2007 and concluded that she was suffering from slight to moderate symptoms including, but not limited to rotator cuff tendonitis, bilateral carpal tunnel syndrome, and other conditions. Id. at 481. On February 28, 2008, Dr. Siu said in his evaluation that "Ms. Lopez appears in moderate to severe acute distress from right elbow pain and restriction." Id. at 483. Although he mainly concluded in his evaluations that any conditions were either slight or moderate, he did say that Ms. Lopez Manzo was suffering from severe right elbow pain. Id. at 484. Ms. Lopez Manzo also exhibited zero grip strength in her right hand, resulting from pain in her elbow. Id. at 485. Dr. Siu's last examination on April 28, 2010 revealed injuries to the right knee, shoulder, and elbow. Id. at 477.

On a pain questionnaire given to Ms. Lopez Manzo in 2008, she indicated "constant throbbing pain" in the neck, right shoulder, right elbow, right wrist, and right knee. Id. at 189. She is prescribed several medications for the pain and it provides her with "some relief" but does not eliminate the pain altogether. Id. Dr. Noralahi was treating the plaintiff at the time she completed the questionnaire. Id.

Dr. E. Murillo, M.D., a doctor employed by the Social Security Administration to analyze Ms. Lopez Manzo's medical history, evaluated her medical records in 2009 and made several recommendations to the Social Security Administration. Id. at 416-17. His recommendations cast doubt on Ms. Lopez Manzo's allegations of being seriously and continuously impaired by her

2
Case No.: 5:11-CV-5137-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

injuries dating back to 2006. Id. Dr. Murillo said that her mental status presented no severe work limitations and further stated that her physical impairments amounted to only one very mild arm impairment. Id. at 417.

The pain has affected her ability to complete at least some of her daily activities. Id. at 190. She says that she is not able to work outside the home, do house chores, socialize, and go shopping. Id. At least some examinations have revealed that she is able to do some of those activities with a great deal of success, though. Id. at 65. Her ability to do social activities has been described as "unlimited" by her treating physician. Id.

In addition to suffering from physical injuries, Ms. Lopez Manzo also suffers from ongoing depression and intermittent auditory hallucinations. Id. at 63. A psychiatrist diagnosed her with depression and chronic pain behaviors on May 8, 2010. Id. at 25. Medical expert Herbert Tanenhaus testified on June 11, 2010 that Ms. Lopez Manzo's symptoms were not severe and noted that with treatment by medication, the auditory hallucinations all but disappeared. Id. at 62, 64. The medical expert opined that Ms. Lopez Manzo, given her education and intellectual functioning, might be able to even perform skilled work. Id. at 66. Just prior to the date when the Ms. Lopez Manzo's disability began, Dr. Maria Acenas, examined Ms. Lopez Manzo and determined that she was experiencing no limitations on the mental work she could produce. Id. at 25.

**b. Procedural History**

Ms. Lopez Manzo filed a Title II application for disability insurance benefits on January 20, 2009. Id. at 20. Additionally, she filed an application for supplemental security income on the same date. Id. She alleged in both applications that she became permanently disabled on May 25, 2006. Id. The claims were denied on May 14, 2009 and the Social Security Administration allowed her claims to be reconsidered on October 16, 2009. Id. The administration also granted her request for a hearing before an administrative law judge ("ALJ"), which took place on June 11, 2010. Id.

The ALJ found that Ms. Lopez Manzo became permanently disabled on April 19, 2010. Id. at 29. On that date, she indicated to Dr. Laura Timmerman, M.D., that she had zero grip strength in

3
Case No.: 5:11-CV-5137-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

her right hand and could not move the fingers on her right hand. Id. at 25. One year before this examination, Dr. Lara Salamacha estimated that Ms. Lopez Manzo could lift up to 20 pounds with her right arm. Id. at 26. The ALJ relied on the vocational expert's finding that Ms. Lopez Manzo could not work any jobs in the national economy without the use of her dominant hand, despite being capable of doing mental work. Id. at 92, 32.

## II. LEGAL STANDARD

### a. Standard for Reviewing the Decision of an Administrative Law Judge

Congress, in passing 42 U.S.C. § 405(g), authorized the courts to review decisions made by administrative law judges. An ALJ's decision must be affirmed if there is "substantial evidence in the record" to support the judge's findings and the decision is not based on legal error. Robinson v. Heckler, 594 F. Supp. 737, 742 (1984); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence" describes the quality of evidence required to affirm a decision made by an ALJ, and the standard to which the reviewing courts holds itself. See Robinson v. Heckler, 594 F. Supp. 737, 742 (1984). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). Furthermore, "where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch, 400 F.3d at 679.

### b. Standard for Determining Disability

The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A determination that a person is disabled is only given under narrow circumstances. See id. A person is disabled under the Social Security Act only when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A "physical or mental impairment" is an "impairment that results from anatomical,

4

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The individual claiming the disability, i.e. the "claimant", "carries the initial burden of proving a disability" using the definition of disability provided in the act. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005). If the claimant fails to prove a disability, any request for benefits will be denied. Id.

If, however, the claimant proves that he is disabled, the ALJ must determine whether the claimant could work any jobs in the national economy. See Ball v. Massanari, 254 F.3d 817, 822 (9th Cir. 2001). By using the national economy as a source for potential work, the Social Security Act assigns the "region where the individual lives" and "several regions of the country" as possible locations where work could be obtained. 42 U.S.C. § 423(d)(2)(A). The Act does not consider whether an individual will actually be hired for a particular set of jobs, or whether job vacancies exist in any given field. Id.

The process described above is embodied in a five step process that is used by the ALJ to determine whether a claimant has met his burden of proving a disability. See 42 U.S.C. § 404.1520(a)(4)(i-v). If during any step, the claimant is "'found to be 'disabled' or 'not disabled' at any step in the sequence there is no need to consider subsequent steps.'" Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) (quoting Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000). These steps are as follows:

1) The administrative law judge must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments.

1   20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is disabled; otherwise the
2   analysis proceeds to step four.

3) 4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. §§ 404.1520(e), 416.920(d). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

## III. DISCUSSION

Ms. Lopez Manzo has already been determined to have been disabled as of April 19, 2010. Def.'s Mot. for Summ. J., at 2. She requests that the ALJ's decision be reversed and she be afforded disability benefits extending back to May 26, 2006, the date of an injury. Pl.'s Mot. for Summ. J., at 1, 9. Alternatively, she requests that her case be remanded and specific instructions to award benefits dating back to May 26, 2006 be given to the presiding administrative law judge. Id. Ms. Lopez Manzo claims her requests should be granted because (1) the ALJ failed to properly credit the opinion of her treating physicians; (2) the ALJ's decision to reject the opinion of her treating physicians was not supported by substantial evidence; (3) the ALJ failed to include all of her severe impairments in his analysis; (4) and a remand is needed so that the opinions of her treating physicians can be credited. Id. at 6-10.

**a. The ALJ's Rejection of the Opinions of Treating Physicians, Dr. Trockel and Dr. Noralahi, and the Credit Given to the Opinion of Medical Expert Dr. Tanenhous**

Ms. Lopez Manzo alleges that the ALJ failed to properly credit the opinion of her treating physicians and that the ALJ's decision to reject their testimony was not based on substantial

6

Case No.: 5:11-CV-5137-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

evidence. Additionally, Ms. Lopez Manzo disputes the weight the ALJ afforded to the state's medical expert's opinion. The court will address each of these arguments in turn. A treating physician's opinion is usually given greater weight than the opinion of a non-treating physician. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). The treating physician can usually provide "a detailed, longitudal picture" of a claimant's medical impairments, while offering a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 416.927(c)(2). Controlling weight is given to the opinion of a treating physician if his opinion is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. Id. The opinion of a treating physician can thus be rejected when that standard, as well as others, is not met.

The ALJ must base his decision to reject a treating physician's opinion on substantial evidence. See Matney, 981 F.2d at 1018. The substantial evidence standard requires the ALJ to reject a treating physician's opinion in only limited circumstances. See id. at 1019. The ALJ may reject the opinion of a treating physician when a treating physician's opinion is "conclusionary," "brief," and "unsupported by clinical findings." Id. When an ALJ rejects the opinion of a treating physician, he must also "give specific, legitimate reasons for disregarding the opinion of the treating physician." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ properly rejected the opinion of Dr. Trockel and gave "specific, legitimate" reasons for doing so. Matney, 981 F.2d at 1019.

Four factors, discussed below, determine the appropriate weight to be given to medical opinions. See 20 C.F.R. §§ 416.927(c)(2), (c)(2)(i-ii).

First, the treating physician's opinion is given more weight if the treating physician has seen the claimant "a number of times" and for a sufficiently long period to obtain a "longitudal picture" of the claimant's impairments. 20 C.F.R. § 416.927(c)(2)(i). Dr. Trockel began treating the Ms. Lopez Manzo in 2009 but did not treat any of her injuries in 2006. AR at 29. He also only examined Ms. Lopez Manzo five times between September, 28, 2009 and March, 22, 2010. Id. at

7

Case No.: 5:11-CV-5137-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

409-435. In total, Dr. Trockel spent two hours examining Ms. Lopez Manzo after conducting his initial psychiatric evaluation. Ms. Lopez Manzo alleges that her disability began in 2006. Id. at 56, 74, 480. Since Dr. Trockel only examined her five times over a period of six months during 2009 and 2010, he could not have obtained a "longitudal picture" of the Ms. Lopez Manzo's impairments. Id. at 29.

Second, the opinion of the treating physician will be given more weight if he has a "reasonable knowledge" of the claimant's impairments. 20 C.F.R. § 416.927(c)(2)(ii). Dr. Trockel has "no first-hand knowledge of the claimant's emotional health in 2006." AR at 29.

Third, the treating physician must present "relevant evidence to support an opinion, particularly medical signs and laboratory findings." 20 C.F.R. § 416.927(c)(3). Dr. Trockel did not conduct formal cognitive testing or occupational testing. AR at 424. He indicated in his evaluation of Ms. Lopez Manzo that he was "guessing what the [work] limitations are based on." Id. Dr. Noralahi's conclusion that Ms. Lopez Manzo cannot perform any work activity since 2006 is based on "MRI findings, reduced range of motion, and scar formation." Id. at 30. The ALJ believed that since the majority of Dr. Noralahi's findings were treated conservatively, his finding that Ms. Lopez Manzo could not work since 2006 was not supported by sufficient evidence. Id. Furthermore, the evaluation describes Ms. Lopez Manzo as having a "combination of problems which drive her dysfunction," however, his notes from 2006-2009 do not indicate such a condition. Id. The work restrictions advocated by the treating physicians were not supported by evidence of their findings contained in the record.

Fourth, opinions that are more consistent with the "record as a whole" will be given more weight than opinions that are inconsistent with the record. 20 C.F.R. § 416.927(c)(4). The testimony of Dr. Tanenhous, the state's medical expert, is the most consistent with the record as a whole. AR at 27. According to Dr. Tanenhous, Ms. Lopez Manzo suffers from "slight restrictions on activities of daily living; slight difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace." Id. His opinion reflects the evaluations of Ms. Lopez Manzo contained in the record. Dr. Robert Perez, on March 24, 2009,

8
Case No.: 5:11-CV-5137-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

stated that Ms. Lopez Manzo was "fully independent in activities of daily living." Id. at 358. As of the date of that evaluation, Ms. Lopez Manzo was interacting with relatives and going shopping regularly with her daughter. Id. Ms. Lopez Manzo herself has previously denied that her emotional problems have affected her memory, concentration, or interactions with family and friends. Id. at 27. Dr. Tanenhous' testimony is consistent with the record in that it describes Ms. Lopez Manzo's emotional impairments as moderate to severe. Id. at 27, 29. Relying on that testimony, the ALJ appropriately found that Ms. Lopez Manzo's emotional impairments alone would not satisfy the requirements for an "impairment or combination of impairments that meets or medically equals one of the listed impairments" in Appendix 1 to subpart P of Part 404. 20 C.F.R. § 404, Subpt. P, App. 1; Id. at 28.

### b. The ALJ's Disability Determination

Lastly, the ALJ properly determined that Ms. Lopez Manzo was unable to work beginning on April 19, 2010. Id. at 32. On that date, Ms. Lopez Manzo reported zero grip strength in her dominant hand. Id. at 32, 92. Mr. Linvill, the vocational expert, determined that Ms. Lopez Manzo could not perform any jobs in the national economy without the use of her dominant hand. Id. at 92. Ms. Lopez Manzo reported zero grip strength in her right hand in 2008, but could lift up to twenty pounds with her right arm in 2009. Id. at 485, 26. The record prior to April 19, 2010 cannot support a conclusion that Ms. Lopez Manzo cannot work any jobs as a result of the loss of the use of her dominant hand. Id. at 92.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED**

Dated: March 29, 2013

_____
EDWARD J. DAVILA
United States District Judge

9
Case No.: 5:11-CV-5137-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT